## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### Urbana Division

| | |
|---|---|
| **MARK RECKER and DEBRA RECKER,** | |
| **Plaintiffs,** | |
| **v.** | **Case No. 16-2232** |
| **GRIEF PACKAGING L.L.C., a Delaware Corporation,** | |
| **Defendant.** | |
| **and** | |
| **GRIEF PACKAGING L.L.C., a Delaware Corporation,** | |
| **Third-Party Plaintiff,** | |
| **v.** | |
| **C.H.I. OVERHEARD DOORS, INC., an Illinois Corporation,** | |
| **Third-Party Defendant.** | |

## ORDER

This case is before the Court on the Daubert Motion to Exclude the Opinion Testimony of Defendant's Retained Witness, Andrew K. Nieto (#86) filed by Plaintiffs Mark Recker and Debra Recker ("Plaintiffs"). Defendant Grief Packaging, L.L.C. ("Grief") filed a Response to Plaintiffs' Motion (#105). The Court has reviewed the Motion and Response and, for the reasons discussed below, Plaintiffs' Motion to Exclude Andrew Nieto (#86) is granted in part and denied in part.

## I.     Background

On July 25, 2016, Plaintiffs filed their Complaint, alleging negligence and loss of consortium stemming from a work-related accident. The parties agree that, at the time of

the incident in question, Plaintiff Mark Recker ("Recker") was employed by Third-Party Defendant C.H.I. Overhead Doors, Inc. ("CHI") as a mechanic.

As part of Recker's duties, he transported damaged semi-trailers from a holding area to the mechanic's shop, where he repaired them. Upon opening the left trailer door to perform a repair, a bundle of cardboard boxes fell from the trailer and landed on Recker, injuring him.

On September 20, 2018, Plaintiffs filed the instant Motion (#86) to bar Defendant's expert witness Andrew K. Nieto ("Nieto"). Nieto is a Construction Safety and Health Consultant employed at SEA, Ltd. (Nieto's Curriculum Vitae, Plaintiffs' Exhibit 2, #86-3, p. 2.) As a consultant, Nieto's areas of expertise include construction safety and workplace incidents. *Id.*

Nieto's Report contains several opinions. First, Nieto concluded that "Mr. Recker, through his own actions or inactions, was solely responsible for facilitating the bale of cardboard materials to fall from the semi-trailer." (Nieto Report, # 86-2, Exhibit 1, p.3.) Nieto concluded that the incident would have been avoided had Mr. Recker "followed common-sense safety rules regarding protecting himself when opening the trailer and adhered to the custom and practice of the shipping industry to verify the location/stability of the load prior to opening the doors." *Id.* Second, Nieto found that CHI "was responsible to provide (sic) Mr. Recker training, and a workplace free of recognized hazards, as required by Section 5(a)(1) of the OSH Act." *Id.* at 4. Nieto concluded that CHI failed to "provide Mr. Recker the training and supervision necessary to ensure Mr. Recker was not injured." *Id.* Third, Nieto opined that "Grief was not responsible for the load potentially shifting while in transit." *Id.* Nieto's Report instead concluded that "[a]ccording to Grief custom and practice, it is up to the C.H.I.'s driver's discretion to request load bars, straps, or to have the load reconfigured…to ensure the load is secured to his standards prior to leaving the facility." *Id.* Because Mr. Vonderheide did not request load bars, straps, or reconfiguration, Nieto found that "any shift in the load and Mr. Recker's subsequent incident are the responsibility of Mr. Vonderheide, C.H.I., and Mr. Recker." *Id.* Finally, Nieto found that Grief was not Mr. Recker's employer

and therefore Greif had no responsibility under the Occupational Safety and Health Act ("OSHA") to provide Recker with a safe work place. *Id.* In summary, Nieto's report found "no evidence" showing that Grief's actions violated OSHA or that Grief was "in any way responsible for Mr. Recker's incident and injuries." *Id*.

Plaintiffs dispute Nieto's credentials to render the opinions set forth in his report. Specifically, Plaintiffs allege that Nieto has not acquired the education, training, experience, skill or knowledge to render him qualified to issue the opinions in his report. Plaintiffs ask the Court to bar Nieto's testimony in its entirety.

## II.    Legal Standard

Federal Rule of Evidence 702 controls the admissibility of expert testimony. "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion" provided the witness and his testimony meet particular criteria. FED. R. EVID. 702; *Tuf Racing Products Inc. v. American Suzuki Motor Corp.*, 223 F. 3d 585, 591 (7th Cir. 2000). As an initial threshold, the witness's specialized knowledge must "help the trier of fact to understand the evidence or to determine a fact in issue." *Id.* Then, the court must find that the testimony is reliable. Rule 702(b) to (d) establishes three distinct reliability criteria the court should consider: (1) the opinion must be based on sufficient facts or data; (2) the opinion must be the product of reliable principles and methods; and (3) the expert must have reliably applied those principles and methods to the facts of the case. *Id.*

Rule 702 in its current form effectively codifies a line of Supreme Court decisions that began with *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). In *Daubert*, the Supreme Court held that the trial court must make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id*. at 592-93. "Specifically, a district court is required to determine (1) whether the expert would testify to valid scientific knowledge, and (2) whether that testimony would assist the trier of fact with a fact at issue." *Walker v. Soo Line R. Co.*, 208 F.3d 581 (7th Cir. 2000). "The principle of *Daubert* is merely that if an

3

expert witness is to offer an opinion based on science, it must be real science, not junk science." *Tuf Racing Products Inc.*, 223 F.3d at 591.

The Court's role is to scrutinize the proposed testimony to determine whether it is sufficiently reliable to present to a jury. *Lablsely v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012). Nevertheless, a *Daubert* inquiry is not designed to have the district judge take the place of the jury to decide ultimate issues of credibility and accuracy. "[R]ejection of expert testimony is the exception rather than the rule." FED. R. EVID. 702, advisory committee notes.

III.    **Analysis**

   a.    **Nieto's Trucking Practices Opinions**

Pursuant to Federal Rule of Evidence 702, Nieto's opinion must be derived from reliable principles and methods. There is no indication that Nieto's opinions regarding safe trucking practices meet this standard.

At his deposition, Nieto was asked if he knew the custom and practice in the industry "for what somebody should do when they're getting ready to open trailer [sic] doors." (Nieto Deposition, #86-4, Exhibit 3, p. 51.) Nieto testified that he based his opinion that Recker should have verified the location and stability of the load prior to opening the doors on the "deposition testimony of several people where they said this is typically how you're supposed to do it. . . ." *Id.* at 50-51. Nieto "assume[d] that's the custom and practice, because it makes sense to check before you go opening a door." *Id.* at 52.

Plaintiffs' counsel asked Nieto about his opinion that "[a]ccording to Grief custom and practice, it is up to the C.H.I.'s driver's discretion to request load bars, straps, or to have the load recognized by MultiCorr[1] to ensure the load is secured to his standards prior to leaving the facility." Nieto testified that he based this opinion as to Grief's custom and practice on the "testimony of what [Grief] said the drivers can do." *Id.* at 52. Nieto was unable to answer questions about the company's actual policies. *Id.* at 53.

---

[1] Multicorr is a division of Grief and was the actual shipper in this case. The parties do not dispute that Grief is liable for the actions of Multicorr or make any arguments that Multicorr, not Grief, is the proper party. Therefore, the Court will refer to Muticorr and Grief interchangeably as Grief.

While Nieto has experience in OSHA and site safety standards, he has no real experience with trailer practices and load safety, nor any knowledge of Grief's safety policies. Nieto's professional resume states that he has a 30-Hour Card certification by OSHA in both Construction and General Industry. (Nieto Resume, #86-3, Exhibit 2, p. 4.) Nieto additionally is an authorized OSHA Outreach Instructor for OSHA 10 and 30-Hour Card Courses in Construction. *Id.* at 3. His experience deals primarily with construction safety. Nieto does not have any demonstrated training on trucking practices or load safety. In fact, Nieto admits his own inexperience. For example, in his deposition, Nieto stated that he has no experience in securing semi-trailers and had never observed a shipper loading cargo into a trailer. (Nieto Deposition, #86-4, Exhibit 3, p. 37.) Moreover, Nieto stated that the only time he ever saw a load lock was when he worked at a warehouse "for a couple of days and they had, you know, load locks sitting around." *Id.* at 36. While Nieto had seen load locks, he had never held one or even seen one being applied to a trailer. *Id.* When asked whether it was proper for an employee to load a bale with a broken strap, Nieto responded "I don't know. I'm not an expert in banding and loading cargo like this." *Id.* at 45.

In sum, Nieto's qualifications regarding trucking practices fail to meet the standard set forth by Rule 702 and *Daubert*. Accordingly, Nieto is barred from testifying 1) on safe trailer loading practices founded in trucking industry standards or related regulations and 2) on Grief's safety policies regarding cargo.

### b. Nieto's OSHA Standards Opinions

Nieto's education and experience relate to OSHA. As noted above, Nieto's resume shows that he has a 30-Hour Card certification by OSHA in both Construction and General Industry. (Nieto Resume, #86-3, Exhibit 2, p. 4.) Nieto additionally is an authorized OSHA Outreach Instructor for OSHA 10 and 30-Hour Card Courses in Construction. *Id.* at 3. The Court therefore finds that Nieto is qualified to testify as to the OSHA standards and any perceived departures from those standards.

Nieto opines that CHI was responsible for providing Recker training under Section 5(a)(1) of OSHA. (Nieto Report, # 86-2, Exhibit 1, p.4.). He further opines that

5

Grief was not Recker's employer and had no responsibility under OSHA to provide Recker with a safe work place. *Id.*

Nieto may describe OSHA standards, his opinion about what those standards required, and whether he believes certain conduct satisfied or deviated from those standards. Nieto may not, however, testify that these standards created a legal duty in this instance or opine that anyone violated a legal duty. Moreover, Nieto may not draw any factual conclusions about contested facts.

### c. Ultimate Conclusion Opinions

Nieto's report also suggests that he intends to testify that one party was "solely responsible" for the incident. This is the equivalent of testifying that one party is liable, while the other is not. Although an expert's opinion "is not objectionable just because it embraces an ultimate issue," it is well established in the Seventh Circuit that expert witnesses are not permitted to give testimony "as to legal conclusions that will determine the outcome of the case." *Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003); FED. R. EVID. 704(a). "When an expert offers an opinion relevant to applying a legal standard . . . the expert's role is 'limited to describing sound professional standards and identifying departures from them.'" *Jimenez v. City of Chicago*, 732 F.3d 710, 721 (7th Cir. 2013) (quoting *West v. Waymire*, 114 F.3d 646, 652 (7th Cir. 1997)). *See also Sanders v. City of Chicago Heights*, 2016 WL 1730608, at * 7 ("There is a difference between stating a legal conclusion and providing concrete information against which to measure abstract legal concepts." (quoting *United States v. Blount*, 502 F. 3d 673, 680 (7th Cir. 2007)).

Nieto may not testify about who was or was not "responsible" for the incident. Questions designed to allow a witness to tell the jury what result to reach are impermissible. *See* FED. R. EVID. 704, Advisory Comm. Notes.

## IV.   Conclusion

For the reasons discussed above, Plaintiffs' Motion to Exclude the Testimony and Opinions of Grief's Expert Andrew Nieto, CSP (#86) is granted in part and denied in part. Nieto will be permitted to testify consistent with this Order. He may opine on matters

that fall within his expertise but may not testify on matters outside the scope of his expertise. Therefore, Nieto may testify on matters that are related to the Occupational Safety and Health Administration standards. He is barred from testifying on matters that rely on trucking industry standards or the Federal Motor Carrier Safety Regulations. Nieto is further barred from any opinion that attempts to define a legal duty, concludes that one party breached that legal duty, or tells the jury to find in favor of one party or the other.

ENTERED this 20th day of December, 2018.

s/ERIC I. LONG

UNITED STATES MAGISTRATE JUDGE