E-FILED
Wednesday, 13 February, 2019  02:56:22 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### Urbana Division

**MARK RECKER and DEBRA RECKER,**

    **Plaintiffs,**

**v.**

**GRIEF PACKAGING L.L.C., a Delaware
Corporation,**

    **Defendant.**

**GRIEF PACKAGING L.L.C., a Delaware
Corporation,**

    **Third-Party Plaintiff,**

**v.**

**C.H.I. OVERHEAD DOORS, INC., an
Illinois Corporation,**

    **Third-Party Defendant.**

**Case No. 16-2232**

### ORDER

This matter is before the Court on Defendant Greif Packaging's Motion in Limine #3, in which Greif asks the Court to bar evidence of subsequent remedial measures. (#97). Plaintiff filed a response, arguing that it seeks to present evidence of a policy that existed at the time of Plaintiff's injury. (#104).

To the extent that Greif asks this Court to enter an order generally barring evidence of subsequent remedial measures to prove Greif's negligence, that motion is GRANTED. Federal Rule of Evidence 407 makes clear that, when measures are taken that would have made an earlier injury less likely to occur, evidence of the subsequent measures are not admissible to prove negligence. Fed.R.Evid. 407. To the extent

Plaintiff intends to offer evidence of a subsequent remedial measure for another purpose, that matter should be raised with the Court outside the presence of the jury prior to offering the evidence.

Plaintiffs' argument, however, is that they intend to present evidence of a Greif Packaging policy that existed prior to Mark Recker's injury. In particular, the document Plaintiffs intend to present is entitled "SPC Job Safety Analysis Form." It includes specific job steps that a shipper should follow when loading a truck for delivery. According to the form, these steps are intended to prevent a "bale falling on someone when unloading." (#104, ex. 2). These steps require the shipper to "follow SOP for loading trailers" and to "use load locks."

Defendant objects to this evidence because the form itself and the policy are from Southeastern Packaging Company, rather than MultiCorr. According to Defendant, Greif Packaging, LLC is sued because it owned and operated CorrChoice, which in turned owned and operated five separate entities that included both Southeastern Packaging in North Carolina and Multicorr in Louisville, Kentucky. According to Defendant, safety protocol followed by one of its divisions, Southeastern Packaging, is not relevant to a lawsuit for conduct that occurred in another of its divisions, Multicorr.

The parties disagreed about Greif Packaging LLC's corporate structure. According to Greif, Inc.'s annual report, Greif Packaging LLC is a wholly owned subsidiary of Greif, Inc. A review of the North Carolina Secretary of State website revealed that Southeastern Packaging was merged into CorrChoice LLC in 2004.[1] Southeastern Packaging no longer operates as an incorporated entity separate from CorrChoice. Similarly, according to filings with the Kentucky Secretary of State, Greif Packaging LLC operates in the state of Kentucky under the assumed names of CorrChoice and Multicorr. Given this, neither functions as a separate and distinct

---

[1] Although a court may take judicial notice of facts that are not subject to reasonable dispute, the Court is not taking judicial notice of these facts. FED.R.EVID. 201. Instead, the Court is relying on this information for purposes of this Order, and either party is free to present evidence that contradicts it.

corporate entity. Finally, according to filings with the Ohio Secretary of State, Greif Packaging LLC operates in the State of Ohio using the trade name CorrChoice, which was first used on December 31, 2007. In sum, Greif Packaging LLC is the only active legal entity. It offers a number of products and services using the trade name of CorrChoice. CorrChoice, in turn, does business in five separate locations using different trade names, including among them Multicorr in Louisville, Kentucky, and Southeastern Packaging Company in Concord, North Carolina.

Thus, the question before the Court is what relevance, if any, does a safety process adopted by one division of a limited liability company have in a case that relates to conduct occurring at a separate division of that same company. Plaintiffs argue that if one division had a safety policy, the other should have been aware of it and, if it was better, should have abided by it. Defense counters that no one in Louisville had any idea what the employees at the facility in North Carolina were doing, and could not have followed a policy about which those employees were unaware.

Plaintiffs' remaining claim for the jury is that Greif was negligent because it "loaded bundles of cardboard boxes in the rear of the trailer's width when loads arranged side by side should have been placed in the nose of the trailer and not the rear of the trailer." "To establish a valid claim for negligence in the state of Illinois, a party must demonstrate that the defendant owed him a duty, that the defendant breached this duty, and that he suffered an injury that was proximately caused by the defendant's breach." *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 702 (7th Cir. 2009) (*citing Cunis v. Brennan*, 56 Ill. 2d 372, 308 N.E.2d 617, 618 (Ill. 1974)). As noted in an earlier order,

> the primary duty as to the safe loading of property is therefore upon the carrier. When the shipper assumes the responsibility of loading, the general rule is that he becomes liable for the defects which are latent and concealed and cannot be discerned by ordinary observation by the agents of the carrier; but if the improper loading is apparent, the carrier will be liable notwithstanding the negligence of the shipper.

3

*United States v. Savage Truck Line, Inc.*, 209 F.2d 442, 445 (4th Cir. 1953). The jury will therefore determine, among other findings, whether Greif's employees loaded the trailer in a way that resulted in a latent defect that proximately caused Plaintiffs' injuries.

Plaintiffs argue, without citation to any case law, that knowledge of every employee within Greif, regardless of where they work, should be imputed to the parent company and all its other employees. This means, according to Plaintiffs, that because someone at Southeastern Packaging had established a safety policy that might have prevented Plaintiffs injury, then all of Greif's other divisions, by law, should have known about that local policy and adopted it.

When the Court asked counsel for Plaintiffs to explain the purpose for which they intended to use this policy and the corresponding form, counsel responded that it would be used to show "[t]hat this trailer was not properly loaded, that they didn't do a step-down procedure." January 14, 2019 hearing.

Evidence must be relevant before it will be admitted at trial. Evidence is relevant if it has any tendency to make a fact more or less probable and the fact is of consequence in determining the action. Fed.R.Evid. 401. If Greif Packaging LLC had in place a policy, that it communicated to all its divisions, for the proper loading of trailers that required the use of a step-down procedure, that policy would be relevant to show a number of facts. For example, it would demonstrate that the injury at issue was indeed foreseeable to Defendant; that the organization was aware of the risk and had communicated to its employees a way to load a trailer to avoid the injury; that the employees responsible for loading the trailer should have known the proper way to load the trailer in a way that could have avoided the injury; and that Greif's employees violated their own internal policies regarding the proper loading of trailers.

All this relevance, however, assumes that the policy was communicated from Greif (or CorrChoice) to its separate divisions. Defendants contest this and argue that the policy was local to Southeastern Packaging. In reviewing the form, it is entitled an

4

"SPC" form, which is specific to Southeastern Packaging Company. Indeed, the form itself indicates that it originated from the "Southeastern Packaging Safety Department." Moreover, the witness relied upon by Plaintiffs in support of this policy was, according to Plaintiffs, the General Manager for Southeastern Packaging. No evidence has been presented to the Court to suggest that either this form or the loading policy in general originated at CorrChoice or Greif or was communicated to the Multicorr employees in Louisville, Kentucky. Without some evidence that employees of the division at issue were aware of the Southeastern Packaging policy or were required by Greif, CorrChoice, or Multicorr to follow it, the SPC form and the Southeastern Packaging policy are not relevant to prove any fact at issue in this case.[2] Accordingly, Defendant's Motion in Limine #3 (#97) is GRANTED.

ENTERED this 13th day of February, 2019.

s/ERIC I. LONG
UNITED STATES MAGISTRATE JUDGE

---

[2] This Order does not preclude the admissibility of evidence relating to any similar safety policy applicable to and/or followed at Multicorr.