UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

| | |
|---|---|
| MARK RECKER and DEBRA RECKER, <br><br>Plaintiffs, <br><br>v. <br><br>GREIF PACKAGING L.L.C., a Delaware Corporation, <br><br>Defendant. <br><br>and <br><br>GREIF PACKAGING L.L.C., a Delaware Corporation, <br><br>Third-Party Plaintiff, <br><br>v. <br><br>C.H.I. OVERHEARD DOORS, INC., an Illinois Corporation, <br><br>Third-Party Defendant. | Case No. 16-2232 |

ORDER

This case is before the Court on Plaintiffs Mark Recker and Debra Recker's ("Plaintiffs") Third Motion in Limine (#103), as well as Defendant Greif Packaging, L.L.C.'s ("Greif") First Motion in Limine (#95) and Second Motion in Limine (#96). The Court has reviewed the Motions, Responses, and Supplemental Briefings and, for the reasons discussed below, Plaintiffs' Third Motion in Limine (#103) is GRANTED in part, DENIED in part, and RESERVED in part. Likewise, Defendants' First Motion in Limine (#95) and Second Motion in Limine (#96) are GRANTED in part, DENIED in part, and RESERVED in part.

I.  **Background**

On July 25, 2016, Plaintiffs filed their Complaint, alleging negligence and loss of consortium stemming from a work-related accident. The parties agree that, at the time of the incident in question, Plaintiff Mark Recker ("Recker") was employed by Third-Party Defendant C.H.I. Overhead Doors, Inc. ("CHI") as a mechanic.

As part of Recker's duties, he transported damaged semi-trailers from a holding area to the mechanic's shop, where he repaired them. Upon opening the left trailer door of one such trailer, a bale of cardboard boxes fell from the trailer and landed on Recker, injuring him.

On October 1, 2018, Plaintiffs filed their Third Motion in Limine (#103), asking the Court to allow Plaintiffs to admit evidence of "substantially similar occurrences that occurred prior to Mark Recker's injury of July 13, 2015, and substantially similar occurrences after Mark Recker's July 13, 2015, injury." In particular, Plaintiffs want to admit evidence that cardboard bales have fallen from other Grief trailers in other parts of the country. Plaintiffs also want to admit evidence that other people have been injured because of these incidents. In that motion, Plaintiffs made no attempt to demonstrate, other than declaring as such, that the other incidents were similar to the Recker incident.

On the other hand, Defendant filed its First Motion in Limine (#95) seeking to exclude any evidence regarding e-mail correspondence as to "unrelated complaints of load shifts." Defendant also filed its Second Motion in Limine (#96), seeking to exclude any evidence regarding unrelated load shift "incidents, accidents, and lawsuits." Thus, Defendant's First and Second Motions seek to bar the same evidence of other incidents involving products shipped by Greif that Plaintiffs want to admit.

Plaintiffs responded to Defendant's motions, attaching some of the proposed exhibits and providing additional information about the other incidents (#108, ex. 1, and #111, ex. 1). Importantly, Plaintiffs noted that "plaintiffs' counsel understands that their burden is to establish that the other lawsuits were for injuries caused under substantially similar circumstances." (#111, p.2). After providing limited information about two other

incidents (one involving John Fox and another involving Timothy Cribb), Plaintiffs concluded that the photographs "easily demonstrated" that the "incidents are substantially similar." (#111, p.3). With that, Plaintiffs argued that the cardboard bales were identical, that no load locks were used in any of the incidents, and that the bales fell out of the trailers.

On January 14, 2019, the Court heard argument on the pending motions in limine. During this hearing, the Court requested that Plaintiff provide supplemental briefing showing how the alleged other occurrences were substantially similar to the Recker incident. In particular, the Court told Plaintiffs' counsel to supplement the motion to include "precisely" what they want to present, including every document they intend to use at trial and why they intend to present the evidence. The Court stated that this supplement should show "precisely what you want to do and why you want to do it." The Court made clear that the information before it was inadequate. The Court asked Plaintiff for precision in identifying what witnesses would be used, what Plaintiffs anticipate those witnesses would say, and what documents and photographs they intend to present through those witnesses.

Plaintiffs filed a supplemental memorandum, along with e-mails and photographs (many of which had been previously attached without explanation), on January 21, 2019 (# 131) (# 132). For the most part, Plaintiffs failed to address the Court's concerns or to provide precise explanations of what they wanted admitted and why. Instead, Plaintiffs again attached e-mails out of context, photos without explanation, and excerpts from depositions in another case. The sum of Plaintiffs' argument is that the photos and emails relating to other occurrences speak for themselves and that should be enough to demonstrate substantial similarity.

Defendant filed its Response (#133) to the supplement on January 28, 2019.

II.    **Legal Standard**

The question before the Court is whether evidence of other incidents should be admitted before the jury. The court will grant a motion in limine to bar evidence only where that evidence is clearly inadmissible for any purpose. *Taylor v. Union Pac. R. Co.*,

3

2010 WL 5421298, at *1 (S.D.Ill. Dec. 27, 2010). This is a high standard. *Thomas v. Sheahan*, 514 F.Supp.2d 1083, 1087 (N.D. Ill. 2007). The moving party bears the burden of establishing clear inadmissibility. *Euroholdings Capital & Inv. Corp. v. Harris Trust & Sav. Bank*, 602 F.Supp.2d 928, 934 (N.D. Ill. 2009). If the moving party cannot satisfy her burden, the evidentiary ruling generally should be deferred until trial. That is because, at trial, the Court will have the benefit of understanding "the context, foundation, and relevance of the contested evidence within the framework of the trial as a whole." *Casares v. Bernal*, 790 F.Supp.2d 769, 775 (N.D. Ill. 2011).

The parties agree that before Plaintiffs may introduce evidence of other incidents, Plaintiffs must show that the other incidents are "substantially similar" to the Recker incident.[1] As the Seventh Circuit has stated, "our own precedents recognize that other accidents are generally deemed admissible both to prove the existence of a defect or danger in a location or a product and to show that the defendant had notice of the defect or danger, so long as the other accidents are 'substantially similar' to the accident at issue in the litigation." *Mihailovich v. Laatsch*, 359 F.3d 892, 908 (7th Cir. 2004) *citing Weir v. Crown Equip. Corp.*, 217 F.3d 453, 457 (7th Cir. 2000); *Ross v. Black & Decker, Inc.*, 977 F.2d 1178, 1185 (7th Cir. 1992); *Estate of Carey by Carey v. Hy-Temp Mfg., Inc.*, 929 F.2d 1229, 1235 n.2 (7th Cir. 1991); *Nachtsheim v. Beech Aircraft Corp.*, 847 F.2d 1261, 1268 (7th Cir. 1988); *see also Walker v. Trico Mfg. Co.*, 487 F.2d 595, 599 (7th Cir. 1973); *Lever Bros. Co. v. Atlas Assur. Co.*, 131 F.2d 770, 777 (7th Cir. 1942).

In this case, Plaintiffs have alleged that Greif negligently loaded the trailer and negligently secured the bales of cardboard. This negligence, according to Plaintiff, caused the bales of cardboard to shift, which in turn led to one of the bales falling from the back of the trailer on to Recker. As noted by the Court in its Order on Defendant's Motion for

---

[1] The Court recognizes Defendant's position that the "substantially similar" doctrine does not apply outside of products' liability cases. While the Court agrees that most cases apply the doctrine in the products' liability context, the Court has not found (and Defendants have not cited) any case that conclusively says the doctrine is limited only to products' liability cases. Moreover, a number of courts have applied the standard in other contexts, including accidents involving road conditions, railroad crossings, and even slip and falls. *See, e.g., Mihailovich v. Laatsch*, 359 F.3d 892 (7th Cir. 2004). The Court, therefore, will apply the doctrine in this case and resolve the parties' arguments on the merits.

4

Summary Judgment, "[t]o establish a valid claim for negligence in the state of Illinois, a party must demonstrate that the defendant owed him a duty, that the defendant breached this duty, and that he suffered an injury that was proximately caused by the defendant's breach." *Id.* (*citing Cunis v. Brennan*, 56 Ill. 2d 372, 308 N.E.2d 617, 618 (Ill. 1974)). A shipper of goods who assumes the responsibility of loading "becomes liable for the defects which are latent and concealed and cannot be discerned by ordinary observation by the agents of the carrier." *United States v. Savage Truck Line, Inc.*, 209 F.2d 442, 445 (4th Cir. 1953). Thus, in order to succeed at trial, Plaintiffs must show, in part, that Defendants loaded the trailer in a way that created a dangerous condition that could not be discerned by ordinary observation by the carrier.

Apparently to establish this, Plaintiffs are seeking to introduce evidence of many other instances in which cardboard bales loaded by Defendant shifted and fell, or threatened to fall, when the trailer doors were later opened. It is frankly unclear from Plaintiffs' briefs and arguments, however, for what precise purpose this evidence is being offered. When asked directly during the January 14 hearing, Plaintiffs' counsel responded, "common cause, that it's a dangerous activity." In their supplemental memo, Plaintiffs, while restating the law, also included that they might be trying to show "that defendant's activities were in fact dangerous." Beyond these two very limited statements, Plaintiffs have not stated why they want the evidence admitted or how admission of these other occurrences would prove anything at issue.

Plaintiffs' failure to articulate clearly the purpose for which they are offering the other incidents complicates the analysis because "[w]here . . . the other accidents are offered as proof of a dangerous condition, courts insist on a greater degree of similarity between those accidents and the one at issue than they do when the other incidents are offered solely to establish notice of a potential danger to the defendant." *Nachtsheim*, 847 F.2d at 1268 n.9. With this in mind, the Court construes Plaintiffs' statement during the January 14 hearing that the evidence was intended to prove a "common cause" to mean that Plaintiffs intend the evidence to prove the Defendants' manner of loading and use of banding created a dangerous condition.

5

Given this, the Seventh Circuit, in *Mihailovich*, has defined the analysis appropriate for this type of case:

> In applying this standard, we have emphasized that 'substantially similar' does not mean 'identical,' and that the range between similar and identical is a matter to be addressed on cross-examination. The particular defect or danger alleged by the plaintiff will serve to define the degree of commonality that there must be among the accidents in order for them to be considered substantially similar. Looking to the established facts underlying both the plaintiff's accident and the other accidents she has proffered, the court must consider whether those facts reasonably support an inference that all of the accidents share a common cause -- i.e., the danger that the plaintiff has alleged. If the facts do support such an inference, then the other accidents are admissible barring other factors suggesting that their admission will result in undue prejudice.

*Mihailovich*, 359 F.3d at 908 (citations and quotation marks omitted).

### III.    Analysis

Plaintiffs have provided the Court very little information about the incidents that they want to admit into evidence. Plaintiffs' supplemental filing shows that Plaintiffs are seeking to introduce three categories of documents. First, Plaintiffs seek to introduce twelve occurrences prior to the Recker injury that did not result in injury. Second, Plaintiffs seek to introduce evidence of ten occurrences that happened after the Recker injury and did not result in injury. Third, Plaintiffs seek to introduce evidence from two specific incidents that resulted in injury, which are referred to as the "Cribb" and "Fox" incidents.

In reviewing each of these proposed instances, the important question is not who is at fault in a legal sense but what that particular incident can tell the jury about the dangerousness of the manner in which the bales were loaded. The Court must look at each instance separately to determine whether the proffered facts support an inference that the incident in question shared a common cause, that is the danger that Plaintiffs have alleged regarding the loading defect and banding.

6

### a.      Cribb and Fox Incidents

Plaintiffs want to introduce evidence from two particular incidents that resulted in injury. One incident is a separate lawsuit, Cribb v. Greif LLC, and the other relates to John Fox.

As to the Fox matter, keeping in mind the particular danger Recker has alleged—one created by Greif employees negligently loading the product in the rear of the trailer and negligently securing the cardboard—the evidence before the Court demonstrates that the two incidents are substantially similar. Plaintiffs proffered that, on October 14, 2014, John Fox transported a load of cardboard manufactured by Multicorr and loaded on to his truck by Multicorr employees. No load locks were installed. Fox transported the load from Louisville, Kentucky, to Decatur, Illinois. Upon opening the trailer in Deactur, Fox discovered that the load had shifted and was leaning. When he attempted to correct the situation, one of the bales fell on him causing him to be injured.

Similarly, Recker's case involves cardboard manufactured by Multicorr and loaded on to a trailer by Multicorr employees. No load locks were used, and the load was transported from Louisville to central Illinois. Pictures of the two incidents show that the products were substantially similar and weighed approximately the same. At some point before Recker opened the trailer door, the load had shifted and fell out of the trailer.

Plaintiffs also point to certain photographs to demonstrate that the two incidents involved substantially similar banding problems. Plaintiffs note that the Fox pictures show bands that secured the bales of cardboard had failed or were loose. Similarly, the Recker photos show loose bands. Both loads were manufactured by Multicorr in Louisville within approximately 10 months of each other. This creates an inference that both loads were likely banded using the same or substantially similar equipment and employees.[2]

---

[2] In drawing this inference, the Court has also considered other evidence that Multicorr sought capital for, and later installed, new banding equipment to address this problem following Recker's injury. Although this evidence would be barred by Rule 407 (as evidence of a subsequent remedial measure intended to

Moreover, according to Plaintiffs, the incidents are also similar because the Multicorr employees failed to use a step-down procedure when loading the trucks. Greif Decatur Safety Director, Todd Knackmuhs, will testify that Greif did not use a step-down procedure when loading the Fox truck. John Aman also will testify to this. In his deposition taken in the Cribbs case, speaking about the Fox incident, Aman testified to the following:

> A: Based on what I see on the picture, it appears the unit should have been stepped down.
> Q: Stepped down is safer than using a load lock, isn't it? If it's actually performed?
> A: If it's performed correctly.
> Q: This incident was not performed correctly; correct?
> A: It appears that way.
> Q: And then Mr. – in the exhibits that we saw earlier today, Exhibit 4 and 5, that was not stepped down correctly, was it?
> A: That was not stepped down.

Deposition of John M. Aman, d/e #132, pgs. 12-13. Aman also will testify that a step-down procedure was not used in the Recker case. In his deposition in this case, Aman gave the following testimony.

> Q: Do you know what a stepdown procedure is with respect to stabilizing loads?
> A: Yes.
> Q: What is it?
> A: It's when you leave the tail of the trailer with one bundle high, versus two high, so you leave some empty space on the trailer.
> Q: At the tail of the trailer, which direction would the bundle be? Would it be side to side or front to back?
> A: It would be front to back. The last unit on the trailer would be single stacked.
> Q: Front to back?
> A: Yes.

Aman Dep. pg. 43, ln. 8-24. Aman went on to give the following testimony:

---

prove negligence), the Court is not bound by the Rules of Evidence in deciding preliminary questions. FED.R.EVID. 104(a).

8

> Q: You testified about the stepdown procedure for loading trailers. Do you recall that?
> A: I did.
> Q: Has a stepdown procedure ever been used at Multi-Corr?
> A: Yes.
> Q: When or starting when?
> A: Starting after this incident, we tried to give the loaders a basis on when to step down and when to use load locks to try to eliminate this in the future.
> Q: Was that done in response –
> A: You cut out there. Please repeat the question.
> Q: Putting that stepdown procedure into effect, was that done in response to what happened to Mr. Recker?
> A: It was.

Aman Dep., pg. 95, ln. 2-20. Accordingly, it is likely that Aman will testify that he is familiar with a step-down procedure to load a trailer and that a step-down procedure was not performed in this case. He will also note that it was not used in the Fox incident, and that both instances led to a load that ultimately fell from the trailer.

All this demonstrates substantial similarity between the Fox and Recker incidents. The cardboard was manufactured in the same location. The cardboard was banded together using the same equipment by Multicorr employees following the same procedures. The bales of cardboard are substantially similar in size and weight. The bales were loaded onto the trailer by Multicorr employees following the same or substantially similar procedures, which did not include using a step-down procedure. The loads were transported from Louisville, Kentucky to a location in central Illinois. Although the two routes were not identical, they were substantially similar in distance and terrain. At the time the trailers were opened, both loads had shifted, and one of the bales fell out of the truck.

The Court recognizes Defendant's argument that other factors are unknown. In the Fox case, we do not know the extent of any inspections, when the load shifted, the training or experience of the driver or the person opening the trailer, the precise route taken, or the status of the bands before the bales fell off the trailers. However, "substantially similar" does not mean "identical," and the range between similar and

9

identical is a matter that can be addressed on cross-examination. Moreover, the dissimilarities between the two incidents have little to do with that which Plaintiffs are attempting to prove through the evidence. The facts from the Fox incident that are sufficiently similar to the Recker case might be used to reasonably support an inference that the two accidents share a common cause, which is what Plaintiffs are trying to prove through this evidence. The dissimilarities noted by Defendant have little relation, if any, to the allegedly dangerous condition created by the loose banding or the process used to load the trailer.

That does not end the analysis, however. Defendant also argues that, under Federal Rule of Evidence 403, the danger of unfair prejudice would substantially outweigh the probative value of these other accidents. *Villalba v. Consolidated Freightways Corp.*, 2000 U.S. Dist. LEXIS 11773, *20-*26 (N.D. Ill. 2000). Evidence is unduly prejudicial only if it will induce the jury to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented. *Id.* (citations omitted). As Defendant argues, the evidence of prior and/or subsequent occurrences may cause the jury to improperly infer that because Defendant was negligent at a different time that it must have been negligent in this case, without the issue having been proved, the evidence would be unfairly prejudicial. *Id.* Moreover, if the evidence is likely to cause Defendant to present evidence that it was not negligent on these other occasions, the evidence of prior and subsequent occurrences will necessitate a trial within a trial (which will consume time and confuse the jury) and should be excluded under Rule 403. *Id.* This is not the case here. The evidence of the Fox incident is admissible to show a potential common cause of the load shift. The matter of whether Greif, or any other party, was negligent in a legal sense in the Fox incident is unnecessary and will not be permitted, either through evidence or argument, as it is irrelevant and would amount to a waste of the jury's time.

In addition, Fox's injuries have no relevance to this case. Certainly, Fox's injuries do not tend to prove whether loose banding caused a load to shift nor do they tend to prove whether the bales were improperly loaded in the trailer. Given that these are the

two bases for admission in this case, Fox's resulting injuries have little to no probative value. At the same time, the unfair prejudice to Greif is quite high. Evidence of another person's injuries risks inflaming the jury against Greif and could result in the jury ruling based on an emotional response to evidence that has little relation to this case. Accordingly, under Rule 403, Plaintiff is barred from any testimony, evidence, or argument relating to Fox's injuries.

As to the Cribbs incident, although Plaintiffs attempt to equate the Cribbs case and the Fox incident, the two incidents are quite different. Again, the Court must keep in mind the particular danger Recker has alleged, which is one created by Greif employees negligently loading the product in the rear of the trailer and negligently securing the product prior to loading it. Plaintiff argues that the Cribbs incident is substantially similar because the bales were adjacent to the rear trailer doors, and no load lock was utilized to secure the load. Plaintiff further argues that the bales of cardboard were similar and that each bale weighed about the same. Plaintiff also argues that the photographs show that the bales fell from the trailer in a similar way.

Unlike the Fox incident, though, the facts from the Cribbs incident that are sufficiently similar to the Recker case do not reasonably support an inference that the two accidents shared a common cause. Plaintiffs want to use the Cribbs incident to show that Defendant's conduct in this case created a dangerous condition, either because of loose banding prior to loading or the manner in which the trailer was loaded. The Cribbs case involved cardboard manufactured in Concord, North Carolina by a Greif division different from the Recker case. While the cardboard itself was likely similar, there is little evidence before the Court to show that the bales were banded using substantially similar equipment by employees using a substantially similar process.[3] Also, there is nothing to

---

[3] Plaintiffs argue that the Cribbs pictures show loose banding that may have contributed to the accident. But, those pictures are of bales on the ground after they had fallen from the trailer. This is important because the question before the Court is whether the evidence shows that the banding created a dangerous condition on the trailer at the time the trailer was loaded by Multicorr employees. From these photos, one cannot infer whether the loose banding caused the instability or whether the fall caused the banding to become loose. Other than a single band on one bale, the bands on the truck appear to be intact without any apparent instability. This is very different from the Fox incident, in which the evidence shows that the

indicate that the employees in Cribbs used a substantially similar procedure to load the trailer. Indeed, the Court previously considered evidence that the Cribbs employees (at Southeastern Packaging) had a different safety division and followed different loading procedures from those used at Multicorr. Finally, the Cribbs load was transported, at least in part, in North Carolina, but there is no other evidence about the length or terrain of the trip prior to the bales falling from the trailer. In sum, the evidence before the Court relating to the Cribbs case does not reasonably support an inference that the Multicorr employees (that is, the Greif employees working in Louisville, Kentucky) negligently loaded the trailer or secured the cardboard.

      **b.**    **Other Occurrences**

Plaintiffs also want to admit evidence of twenty-two other incidents. The first twelve occurred prior to Recker's injury, submitted as docket entry #132-1, Exhibit 6. In Plaintiffs' response to Defendant's motion to exclude these e-mail communications and pictures, Plaintiffs explained that the emails were between John Aman and other Multicorr employees, among others. Each of these incidents, according to Plaintiffs, involve incidents of Greif employees in Decatur, Illinois complaining to John Aman in Louisville, Kentucky about the manner in which the cardboard bales were loaded on a trailer. According to Plaintiff, the emails and attached photos, on their face, demonstrate their similarity to the Recker incident.

Plaintiffs next seek to admit evidence of ten more occurrences that happened after Recker's injury. This evidence is essentially the same as the evidence relating to the prior occurrences. However, this group also includes emails from or to employees of other companies apparently pertaining to loads delivered by Multicorr.

As it relates to the documents and pictures attached as Plaintiffs' Exhibits 6 and 7 to their Supplemental Memorandum (#132-1), the Court will consider each of them individually during the Final Pre-Trial Conference. Plaintiff must be prepared to satisfy its burden for admission as to each of these incidents at that time:

---

cardboard was banded using the same equipment, the same procedure, and likely (given the temporal proximity) by the same employees as in the Recker incident.

- First, Plaintiffs shall have the documents in the <u>exact</u> form that they intend to present to the jury, including any and all attachments to the emails that they intend to offer and proposed redactions, if any. The redactions and attachments submitted to the Court as part of Plaintiffs' Supplement are not acceptable. The exhibits, as attached to Plaintiffs' Supplement, will not be presented to the jury.
- Second, Plaintiffs must be prepared to explain the admissibility of each document. At a minimum, Plaintiffs must identify the sender and recipient (along with their respective employers) of every email, explain the evidentiary foundation for the email, and how they intend to offer it under the Federal Rules of Evidence.
- Third, Plaintiffs must show how each incident is substantially similar to the Recker incident and how that substantial similarity will be used to reasonably support an inference that the two incidents share a common cause, either because of loose banding or the process used to load the trailer.

In considering each of these incidents, the Court will look to factors similar to those considered in relation to the Cribbs and Fox incidents. In particular, the Court will consider the origin, type, size, and weight of the shipped product; where the product was banded, the equipment used to secure the product, and the process followed; where the product was loaded, who loaded the trailer, and the process followed to load the trailer; the length or terrain of the trip relating to the incident; the type and size of the trailer used; and the temporal proximity of the incidents. Although this list is not intended to be exhaustive, it is representative of the factors the Court will consider.

The Court makes one further note about these emails and pictures. Many of the emails reference the absence of load locks, which Plaintiffs make a poor effort to redact. Defendant argues, and Plaintiffs seem to concede through their statements and proposed redactions, that the Court's ruling that the absence of load locks was an open and obvious danger rendered all reference to load locks inadmissible at trial. That is not what the

Court ordered, nor is it what the Court intended.[4] In ruling on Defendant's Motion for Summary Judgment, the Court concluded that no evidence existed to prove "that the lack of load locks was a latent defect that could not have been discovered by the carrier through reasonable inspection." (#122, p.15). Accordingly, the Court granted summary judgment on this issue and ordered that "Plaintiffs may not argue that Defendant was negligent in failing to include load locks." (*Id.*, p.17). It does not follow from this ruling that the absence or existence of load locks is irrelevant to this case or otherwise wholly inadmissible at trial.

Defendant seems to be trying to use the Court's Summary Judgment Order to exclude evidence of other incidents from the jury. In particular, Defendant argues that any load shift attributable to the absence of load locks, because Defendant cannot be held liable for the absence of load locks, renders that incident dissimilar to the Recker incident. This is not the case. First, load locks may have <u>prevented</u> the load from shifting, but their absence did not <u>cause</u> the load to shift. Plaintiffs argue that Defendant's negligent loose banding <u>caused</u> the load to shift and the Defendant's negligent loading process <u>caused</u> the shifted load to fall from the trailer.

Second, the absence of load locks is a factual similarity that weighs in favor of admissibility. The Court's order on summary judgment related to the legal duty that Defendant owed Plaintiffs and whether any evidence existed that Defendant breached that duty. The Court concluded that the absence of load locks was an open and obvious danger that was the responsibility of the carrier to prevent or address. As noted earlier, the important question in the admissibility of other incidents analysis is not who is at fault in a legal sense (which the Court considered on summary judgment) but what the facts relating to that particular instance can tell the jury about the dangerousness of the manner in which the bales were loaded in the Recker case.

Moreover, the facts surrounding the use or absence of load locks may be relevant to this case in many respects. At a minimum, it was an issue that had been raised within

---

[4] To the extent the Court may have said this somewhere else, that was mistaken.

Multicorr, and one that had been addressed by, among others, John Aman. This tends to show knowledge on the part of Multicorr that its loads were shifting in transit and that Aman and others were looking at ways to confront the known problem, including through load locks. While documents that tend to show only that someone at Multicorr failed to use load locks in a particular situation are not relevant to the remaining claims, to pretend that the issue did not exist and to hide it from the jury would take Defendant's conduct, and that of other relevant parties, completely out of context, thereby misleading the jury in many respects.

With that said, some of these e-mails create a serious risk of confusing the jury. In particular, some emails suggest Multicorr assumed, or offered to assume, the responsibility of installing load locks for a particular customer or Greif recipient. There is no evidence that Multicorr assumed this responsibility for C.H.I. Accordingly, these emails will be scrutinized very closely under Rule 403 during the hearing.

**IV.     Conclusion**

For the reasons discussed above, Plaintiffs' Third Motion in Limine (#103) is GRANTED in part, DENIED in part, and RESERVED in part. Likewise, Defendants' First Motion in Limine (#95) and Second Motion in Limine (#96) are GRANTED in part, DENIED in part, and RESERVED in part.

ENTERED this 28th day of February, 2019.

s/ERIC I. LONG
_____
UNITED STATES MAGISTRATE JUDGE
